UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
JUN CUI,

                                Plaintiff,                   **REPORT &**
-against-                                           **RECOMMENDATION**
                                                                          19-CV-2794-DLI-SJB
O2 KOREAN BBQ, SUNG HO CHOI,

                                Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

       Plaintiff Jun Cui ("Plaintiff") filed a motion seeking approval of the settlement agreement reached by Plaintiff and Defendants O2 Korean BBQ[1] ("O2 BBQ") and Sung Ho Choi[2] ("Cho") in this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") case. (Mot. for Settlement Approval dated Aug. 28, 2019 ("Mot."), Dkt. No. 11; Settlement Agreement dated Aug. 28, 2019 ("Settlement Agreement"), attached as Ex. A to Mot. for Settlement Approval, Dkt. No. 11). The motion for approval of the settlement agreement was referred for report and recommendation by the Honorable Dora L. Irizarry. (Order Referring Mot. dated Aug. 29, 2019). The Court has reviewed the settlement agreement for approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). For the reasons below, it is respectfully recommended that the motion be granted and the settlement agreement be approved.

---

[1] A search of the New York State Department of State's website does not yield any results for "O2 Korean BBQ." A different entity O2 BBQ CORP, a corporation incorporated in the State of New York, also shares the address listed in the Complaint for O2 Korean BBQ. (Compl. dated May 13, 2019, Dkt. No. 1 ¶ 8).

[2] The Settlement Agreement states that Sung Ho Cho was incorrectly identified as "Sung Ho Choi" in the Complaint. (Settlement Agreement at 1).

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action on May 13, 2019, alleging FLSA and NYLL claims, including class and collective allegations. (Compl. at 1). A summons was then issued, (Summons Issued dated May 13, 2019), but the next filing from any party in the case was Plaintiff's notice that he wished to voluntarily dismiss the case without prejudice under Rule 41(a)(1)(A)(i), (Notice of Voluntary Dismissal dated June 10, 2019, Dkt. No. 7). After Judge Irizarry referred the matter, (Order dated June 12, 2019), the Court held a status conference, (Min Order dated June 24, 2019). Plaintiff later notified the Court that the parties had reached a settlement. (Notice of Settlement dated July 19, 2019, Dkt. No. 9). A motion for approval of a settlement agreement reached between Plaintiff and Defendants (the "Settlement Agreement") was filed on August 28, 2019, and Judge Irizarry referred the motion, (Order Referring Mot. dated Aug. 29, 2019). The Court held a *Cheeks* fairness hearing on December 16, 2019, which Cho attended in person. (Min. Entry dated Dec. 16, 2019).

The terms of the Settlement Agreement afford Plaintiff with a gross sum of $37,500, to be paid in eight installments. (Settlement Agreement at 2–3). A total of $518 in costs and $12,327.33 in attorney's fees are to be paid from the gross amount to Plaintiff's counsel. (*Id.* at 2; Mot. at 3). Affidavits of Confession of Judgment are attached in the event of default by either Defendant. (Settlement Agreement at 4). The Settlement Agreement provides that Plaintiff will release all FLSA and NYLL claims, except for claims that cannot be waived by law, including claims arising after the date of the Agreement and those related to government investigations. (*Id.* at 4–5).

DISCUSSION

I. Corporate Defendant's Failure to Appear Does Not Preclude *Cheeks* Approval

As an initial matter, neither defendant has been served with the Complaint, nor has either entered an appearance on the docket, filed an answer, or otherwise responded to the Complaint. Cho appeared in-person at the *Cheeks* hearing, proceeding *pro se*. (*See* Min. Entry dated Dec. 16, 2019). O2 BBQ, however, as a corporate entity, cannot proceed *pro se* and has never appeared. *See La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 348 (E.D.N.Y. 2009) ("[C]orporations cannot proceed in federal court *pro se*.") (citing *Shapiro, Bernstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) (per curiam)). Plaintiff has not sought an extension of time to serve the Complaint and litigate against Defendants, instead electing to settle.

The Court does not believe that the absence of an appearance by the corporate entity at any point, including at the *Cheeks* hearing, precludes approval of the Settlement Agreement.[3] Being able to appear in Court and having authority to settle are two separate things. Cho, the individual defendant, can bind the corporate defendant to a settlement as its owner, principal, and/or agent. (Compl. ¶ 10 ("Defendant Choi is the owner, officer, director and/or managing agent of O2 Korean BBQ at 45-53 Bell Blvd, Bayside, NY 11361 and participated in the day-to-day operations of O2 Korean BBQ.")); *see generally Sound Around, Inc. v. CE Elec. Sales Corp.*, No. 98-CV-1051, 1998 WL 199871, at *1 (E.D.N.Y. Mar. 16, 1998) ("The court will follow the general rule that, where a corporate agent is known to be acting and has actual authority to act for the

---

[3] Nor does the Court see any reason why the failure to serve Cho would preclude *Cheeks* approval after Cho signed the Settlement Agreement and appeared at the *Cheeks* hearing.

3

corporation, his contracts will bind the corporation [.]"). (Cho signed the Settlement Agreement on behalf of himself and the corporation. (Settlement Agreement at 7)). This is possible even though Cho cannot appear on behalf of the corporation to represent the corporation on a *pro se* basis.

And importantly, O2 BBQ has not yet invoked any power of the Court. Both the *Cheeks* fairness review—intended to protect the plaintiff-employee's FLSA rights, not the defendant-employer's—and the motion for dismissal are being sought by Plaintiff, not either Defendant.[4] Plaintiff originally sought voluntary dismissal through notice, (Notice of Voluntary Dismissal dated June 10, 2019, Dkt. No. 7), and Plaintiff filed the *Cheeks* motion. (*See* Mot., Dkt. No. 11). Plaintiff has, however, attached to the Agreement a stipulation of dismissal with prejudice signed by Plaintiff's counsel and Cho for "*Pro Se* Defendants." (Stipulation of Dismissal with Prejudice dated Aug. 28, 2019, attached as Ex. B to Settlement Agreement, Dkt. No. 11). The Court should reject this stipulation and give effect to Plaintiff's notice of voluntary dismissal, which can be done since neither Defendant has answered or moved for summary judgment, and thereby dismiss the action without having to approve a stipulation signed by a defendant that cannot appear on a *pro se* basis. (*See* Notice of Voluntary Dismissal dated June 10, 2019, Dkt. No. 7 (citing Fed. R. Civ. P. 41(a)(1)(A)(i) ("Subject to . . . any applicable federal statute, the plaintiff may dismiss an action without a court order by

---

[4] A *Cheeks* inquiry is not concerned with the rights of the defendant; the fairness of the resolution to the plaintiff is the focus. *See Cheeks*, 796 F.3d at 206 ("Requiring judicial or DOL approval of such settlements is consistent with what both the Supreme Court and [the Second Circuit] have long recognized as the FLSA's underlying purpose: 'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)).

4

filing: . . . a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment.")))). Such a notice need only be signed by Plaintiff. *See In re Amerijet Int'l, Inc.*, 785 F.3d 967, 973 (5th Cir. 2015) ("Rule 41(a)(1)(A)(i) means precisely what it says by stating that only the filing of an answer or motion for summary judgment terminates the plaintiff's unilateral right to dismiss the action by notice." (quotations omitted)); *e.g., Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *1, *5 (S.D.N.Y. Dec. 2, 2016) (dismissing FLSA case with prejudice after plaintiff filed notice of voluntary dismissal under Rule 41(a)(1)(A)(i) signed only by plaintiff's counsel and after court conducted *Cheeks* review).

The court in *Burgos v. San Miguel Transportation, Inc.*, No. 16-CV-5929, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016), reasoned that a corporation's nonappearance does not preclude *Cheeks* review of a settlement to which the corporation is a party. 2016 WL 7015760, at *1 n.1. While corporations may not proceed *pro se*, "for limited purposes, an exception may apply permitting an agent of a corporation [other than an attorney] to represent a corporation when the agent is a party to the action." *Id.* (collecting cases). The court found that this exception applies for the limited purpose of settling" a FLSA action. *Id.* The Court ultimately approved the settlement as consistent with *Cheeks*. *Id.* at *3; *Burgos v. San Miguel Transp., Inc.*, No. 16-CV-5929, 2016 U.S. Dist. LEXIS 172963, at *4 (S.D.N.Y. Dec. 14, 2016) (dismissing case with prejudice after finally approving settlement agreement having received further information about attorney's fees).[5]

---

[5] In *Sarker v. Hollis-PJ, Inc.*, No. 18-CV-2406, 2019 WL 1435880 (E.D.N.Y. Feb. 20, 2019), *reported and recommendation rejected*, 2019 WL 1433079 (Mar. 29, 2019), the Court recommended in the context of a *Cheeks* review that a corporate defendant in a FLSA action be required to get counsel and file a notice of appearance. 2019 WL

5

Not approving this settlement as to the corporate entity, and forcing Plaintiff to litigate, would only impose costs on the Plaintiff and his counsel, with little to no benefit in return. There is nothing to indicate that proceeding against the corporate defendant would accrue to Plaintiff any additional recovery. (It is almost certain that the corporate entity, if service is properly effectuated, would default, and Plaintiff would be forced to seek recovery via default, as opposed to obtaining a sum certain through a settlement negotiated by the corporation's owner and/or principal.)

---

1435880, at *2. Ultimately, the District Court in *Sarker* permitted the voluntary dismissal of the case against the corporate defendant because there was no settlement. 2019 WL 1433079, at *2.

*Sarker* is not this case. For one thing, the recommendation to get counsel was premised on the Second Circuit's decision in *Grace v. Bank Leumi Trust Co. of New York*, 443 F.3d 180, 191–94 (2d Cir. 2006). *Sarker*, 2019 WL 1435880, at *2. *Grace* involved a motion to set aside a judgment against a corporate defendant on the grounds that the *pro se* coporation had not consented to the agreement upon which the judgment was predicated. 443 F.3d at 193. But importantly, the Second Circuit recognized that the situation in *Grace* was unique and limited the holding to the unique facts presented there. *Id.* at 188 ("[W]e limit our decision to the facts of this case, and hold that where plaintiffs enter into a settlement agreement with a judgment-proof, *pro se* defendant with the intent at the time of the settlement to collect from a third party that allegedly received fraudulent conveyances, and further, they attempt to use the judgment as a predicate for a fraudulent conveyance action against the third party, the third party is 'strongly affected' by the judgment and entitled to standing to bring a Rule 60(b) motion.").

There is nothing in this record to indicate that the corporate defendant lacks authority to settle this case—and indeed to the contrary, the individual defendant was the principal and owner of the corporation and therefore can bind the corporation. Neither *Grace* or any case requires a court to reject a settlement or dismissal of a FLSA action against a corporation upon the plaintiff's motion when the dismissal is on terms fair to the plaintiff. Should Plaintiff be forced to enforce the settlement against the corporation in the future, complicated cases may then arise, but those are not present at this time.

6

The Court, therefore, proceeds to evaluate the fairness of the proposed agreement, even in the absence of any service of or appearance by the corporate defendant.

II.    The Settlement Agreement is Fair under *Cheeks*

A FLSA settlement must reflect "a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Information Networking Computing, USA, Inc.*, No. 07-CV-86 2008 WL 724155, *1 (E.D.N.Y. Mar. 13, 2008) (internal quotations and citation omitted); *see also Cheeks*, 796 F.3d at 200. "District courts typically evaluate the fairness of a settlement agreement by considering the factors outlined in *Wolinsky*, which include, among others:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, — F.3d at —, 2020 WL 550470, at *3 (quoting *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335–36 (S.D.N.Y. 2012)). Courts also evaluate the reasonableness of attorney's fees in a FLSA settlement agreement. *Id.* — F.3d at —, 2020 WL 550470, at *8, *10. When evaluating attorney's fees, Courts should not impose hard limits based on proportionality but rather focus on the degree of success obtained by counsel and the legal work completed during the litigation. *Id.*

The Court considers the first several *Wolinksy* factors, among other considerations, in its analysis. The settlement amount as reflected in the Settlement

7

Agreement provides Plaintiff with a recovery that is substantial and fair in light of litigation risk and is within the possible range of recovery. Plaintiff is to recover a gross amount of $37,500, providing him with a net amount of $24,654.67 after attorney's fees and costs. (Settlement at 2). Plaintiff argues he was owed $40,365 in back wages and a total maximum possible recovery of $90,730. (*See* Mot. at 2; Compl. ¶ 20). Continued litigation would impose a myriad of additional costs and fees on Plaintiff and open up the possibility of additional challenges to his suit, which are all resolved with settlement. Furthermore, the financial status of the corporation is in doubt—as evidenced by its lack of an appearance through counsel—which makes any additional recovery doubtful. (*See* Mot. at 3 ("By settling now rather than litigating further, Plaintiff avoids the risk of losing at trial or, even if prevailing at trial, avoid the inability to collect due to the financial hardship faced by Defendants.")). Thus, Plaintiff's recovery of 61% of the unpaid wages, after attorney's fees, is substantial and fair and within the possible range of recovery, particularly in light of the risks presented by this litigation. *See, e.g.*, *Hernandez v. Bolu Inc.*, No. 17-CV-1202, 2019 WL 294797, at *2 (S.D.N.Y. Jan. 23, 2019) ("[T]he settlement awards Plaintiff with approximately 45% of his asserted unpaid wages calculation. Given the risks of litigation, . . . the settlement amount is reasonable.").

In addition, the attorney's fees portion of the settlement, after costs, is for a reasonable amount in light of the degree of success obtained and the work completed by counsel. Plaintiff's counsel will recover $12,327.33 in attorney's fees, one-third of the gross settlement amount after costs, and $518 in costs from the settlement. (Settlement Agreement at 2; Mot. at 3–4). Plaintiff's counsel billed 48.9 hours at two rates for a total of $14,002.50 in fees. (Ex. B to Mot., Dkt. No. 11 at 1–3). Most of counsel's time

8

was spent working on settlement, which included explaining the terms of settlement with Plaintiff and working with a *pro se* defendant, who was acting on behalf of himself and as a principal of the defendant-corporation and needed a Korean interpreter. (*Id.*). The costs are also supported by documentation. (*Id.* at 3). Thus, the Court finds the attorney's fees and costs portions of the settlement to be reasonable in light of the substantial recovery. *See Fisher*, — F.3d at —, 2020 WL 550470, at *9–10 (directing District Court to examine the amount Plaintiff was set to recover compared to achieving complete success and the tasks counsel completed).

Further, the release of claims provided for in the agreement is limited in scope. Plaintiff agrees to waive all FLSA and NYLL claims except those brought by a government agency. (Settlement Agreement at 4–5). No other claims are waived. This release is permissible and does not evidence overreach by the employer. *See, e.g.*, *Dominguez v. Architectural Sign Grp.*, No. 18-CV-5514, 2019 WL 5257894, at *4 (E.D.N.Y. Oct. 17, 2019) (approving a settlement agreement with "releases . . . limited to wage and hour claims that were asserted or could have been asserted by plaintiff in this action and at any time prior to the date of the Settlement Agreement.").

Finally, the Settlement Agreement does not impose a duty of confidentiality or include any other provision offending fairness. *See, e.g.*, *Dominguez*, 2019 WL 5257894, at *4 ("Finally, there is no provision in the Agreement that would limit plaintiff's ability to make truthful statements about his experience litigating this case.").

## CONCLUSION

For the reasons above and those stated on the record, the terms of the Settlement Agreement are fair and reasonable, and it is respectfully recommended that the settlement be approved. The Court also recommends that the stipulation of dismissal be

rejected and Plaintiff's notice voluntary dismissal pursuant to Rule 41(a)(1)(A)(i) filed at Docket No. 7 be given effect.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court **within 14 days** of service of this Report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.").

Plaintiff is directed to serve this Report and Recommendation on Defendants and file proof of such service in the record **within two weeks** of the date of this Report.

SO ORDERED.

*/s/ Sanket J. Bulsara* Feb. 11, 2020
SANKET J. BULSARA
United States Magistrate Judge

Dated: Brooklyn, New York

10